**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| SALANDSTACY CORP., et al.,<br><br>               Plaintiffs,<br><br>v.<br><br>DWIGHT FREENEY, et al.,<br><br>               Defendants. | Civil Action No. 11-3439 (JLL)<br><br><br>**OPINION** |

**LINARES, District Judge.**

This matter arises from a contractual agreement entered into by Plaintiffs SalandStacy Corp. ("S & S"), Salvatore Feli and Stacy Feli, as individuals and sole officers and shareholders of S & S ("Plaintiffs"), to manage, operate and provide services for the Rolling Stone Los Angeles ("RSLA") restaurant, lounge and bar on behalf of Defendant Roof Group, LLC ("Roof Group") and individual officers thereof, including Dwight Freeney ("Freeney"), Aaron West ("West"), Eva Weinberg ("Weinberg"), and David Stern a/k/a David M. Millar a/k/a Michael Millar ("Stern")("Roof Group Defendants").

Defendants Freeney, West and Roof Group LLC have filed a motion to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). [Docket Entry No. 61]. The Court has considered the parties' submissions. No oral argument was heard. Fed. R. Civ. P. 78. Based on the reasons that follow, Defendants' motion to dismiss is **granted.** Counts Two, Three and Four of the Amended Complaint are dismissed *with prejudice*.

## BACKGROUND

**A.**   ***Facts***

The facts relevant to this motion are as follows:[1]

On May 13, 2010, S&S entered into a written agreement ("Agreement") with Roof Group to manage, operate and provide the services of Salvatore Feli and Stacy Feli in connection with the development, construction, management, operation and marketing of RSLA. (Am. Compl., ¶ 21). Pursuant to the Agreement, Roof Group agreed to provide certain compensation to S&S, including but not limited to, $350,000 per year. (*Id.*, ¶ 22). Pursuant to the Agreement, which had a term of five years, S&S became a member of Roof Group effective May 13, 2012. (*Id.*, ¶¶ 23-25).

By way of background, the Amended Complaint alleges that, at some point in 2008, Plaintiff Salvatore Feli met with Defendants West and Freeney to discuss working together on a restaurant venture. (*Id.*, ¶ 28). During this meeting, West and Freeney informed Salvatore Feli that Freeney had signed a $72 million contract with the Indianapolis Colts in 2007, which included a signing bonus of $30 million. (*Id.*, ¶ 28).

On April 2, 2012, Salvatore Feli received a telephone call from West who stated that he and Freeney wanted Salvatore Feli to assume operational control of Roof Group and RSLA. (*Id.*, ¶ 30). During this telephone call, Freeney stated that he had the financial resources to fund all capital requirements for RSLA, that the goal was to see "all members of management become clones of Sal Feli" and that Stern's funding would make it happen. (*Id.*, ¶ 30).

On April 7, 2010, Plaintiffs Salvatore and Stacy Feli met with West at 521 Fifth Avenue in New York, New York, to confirm their involvement with RLSA. (*Id.*, ¶ 31). During this

---

[1] The Court accepts these facts as true solely for purposes of this motion.

meeting, it is alleged that West represented to the Plaintiffs that Freeney had the cash available and would fund all capital requirements for RSLA, including Plaintiffs' compensation. (*Id.*). On the same day, West asked the Plaintiffs to travel to Miami to meet with Stern. According to West, Stern was Freeney's partner and investor in Roof Group and would be the individual responsible for funding the development of RLSA locations. (*Id.*, ¶ 32). In particular, West represented that Stern: (1) was a multi-millionaire who owned a private airplane and multiple Caribbean island homes, (2) was the nephew of billionaire Dr. Phillip Frost (the CEO and Chairman of OPKO Health), and (3) would be providing a $7,000,000 line of credit to Roof Group. (*Id.*, ¶¶ 32-33).

On April 11, 2010, Plaintiffs traveled to Miami, Florida to meet with Stern. During this meeting, Stern told the Plaintiffs that he was an investor in Roof Group and was providing Roof Group with a $7,000,000 line of credit to fund working capital and other business needs. (*Id.*, ¶ 34). He also represented that he had the exclusive licensing deal for Five Guys Burgers for South America and was in negotiations with various casinos in the Bahamas to fund future Rolling Stone restaurant venues at those casinos. (*Id.*). He told the Plaintiffs that he had a large equity interest in Roof Group, as well as a large interest in Freeney and West's other company, American Dream. (*Id.*).

On April 13, 2010, the Roof Defendants, Salvatore Feli and Gavin Brodin, designer of RSLA, met with various Rolling Stone executives in New York. During this meeting, the Rolling Stone executives made reference to certain legal and/or termination issues relating to Defendants' previous partners involved in RSLA. Stern stated that he and Roof Group's legal counsel were resolving those issues. (*Id.*, ¶ 35). During this meeting, Freeney, West and Stern represented to the Rolling Stone executives that RSLA was fully funded with all necessary

3

capital. (*Id.*, ¶ 36).    The Roof Defendants also told the Plaintiffs that they had available capital to expand RSLA into future locations, including a New York location; thus, it was Plaintiffs' understanding that eventually they would return to their New Jersey home to open a location in New York. (*Id.*, ¶¶ 37-38).

Given the foregoing representations, and based upon their understanding that their move to Los Angeles, would be temporary, Plaintiffs entered into the May 13, 2010 Agreement, accepted their positions with RSLA and began scouting New York locations. (*Id.*, ¶ 38-40). Plaintiffs eventually relocated their family to Los Angeles to manage and operate the RSLA. (*Id.*, ¶ 27).

In December 2010, due to Freeney's inability to provide the required funding to Roof Group, RLSA discharged its management staff and Defendants asked the Plaintiffs to accept a decrease in salary.  (*Id.*, ¶¶ 49-50).  Plaintiffs were ultimately terminated on December 22, 2010. (*Id.*, ¶ 51).


**B.**    *Procedural History*

In light of the foregoing allegations, Plaintiffs filed the instant action on April 13, 2011 in the Superior Court of New Jersey Law Division, Essex County.  On June 14, 2011, Defendants removed Plaintiffs' original Complaint to this Court.  [Docket Entry No. 1].[2]   On March 21, 2012, the Court entered an Opinion and Order dismissing, without prejudice, the following claims: (1) conversion, (2) fraud, (3) breach of fiduciary duty, and (4) accounting.  The Court granted Plaintiffs leave to amend the foregoing claims to cure the pleading deficiencies

---

[2] This Court's jurisdiction is premised on 28 U.S.C. § 1332.

addressed by the Court.  The Court declined to dismiss Plaintiffs' tortious interference with contractual relations claim.

On May 4, 2012, Plaintiffs' submitted an Amended Complaint which includes the following claims: (1) breach of contract, (2) fraud, (3) breach of fiduciary duty, (4) accounting, and (5) tortious interference with contractual relations.  Defendants Freeney, West and Roof Group LLC now seek dismissal of the following claims: (1) fraud, (2) breach of fiduciary duty, and (3) accounting pursuant to Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949  (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).  But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 129 S.Ct. at 1949.  Thus, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truth.  *Id.* at 1940; *In re Nice Sys., Ltd. Sec. Litig.*, 135 F. Supp. 2d 551, 565 (D.N.J. 2001).

Additionally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record."

*Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).[3]  With this framework in mind, the Court turns now to Defendants' motion.

## DISCUSSION

As previously stated, Defendants Freeney, West and Roof Group LLC seek dismissal of the following claims: (1) fraud, (2) breach of fiduciary duty, and (3) accounting, pursuant to Rule 12(b)(6).

**1.   *Fraud***

Count Two of Plaintiffs' Amended Complaint alleges, generally, that Plaintiffs were induced into entering the Agreement through numerous fraudulent misrepresentations made by Roof Group, Stern, Freeney and West, and suffered damages as a result thereof.

To establish a claim for common law fraud under New Jersey law, five elements must be met: "a material misrepresentation by the defendant of a presently existing fact or past fact; knowledge or belief by the defendant of its falsity; an intent that the plaintiff rely on the

---

[3] The Court considers the Agreement ("Term Sheet") attached to Defendants' motion (Docket Entry No. 61-1) inasmuch as Plaintiffs' claims are based on this document.  *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993) ("We now hold that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

The Court declines, however, to take "judicial notice" of the various other documents provided by the Defendants for the Court's consideration.  These documents include: (1) the indictment in *United States v. Stern*, CR No. 12-00508, filed in the Central District of California on May 25, 2012, (2) the criminal complaint in *United States v. Weinberg*, MJ No. 12-0694, filed in the Central District of California on March 22, 2012, (3) the Pretrial Detention Order in *United States v. Stern*, No. 12-MJ-02388- BROWN, filed in the Southern District of Florida on April 5, 2012.  Defendants ask the Court to consider these documents because they are "relevant for the consideration of the claims against Defendants."  The Court likewise declines to consider the Declaration of Plaintiff Salvatore Feli attached to Plaintiffs' opposition brief.  These matters are extrinsic to the Amended Complaint and are thus irrelevant to the issue of whether Plaintiffs "state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949.

statement; reasonable reliance by the plaintiff; and resulting damages to the plaintiff." *Marino v. Marino*, 200 N.J. 315, 341 (2009) (*citing Liberty Mut. Ins. Co. v. Land*, 186 N.J. 163, 175 (2006)).

In addition, Federal Rule of Civil Procedure 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The purpose of the heightened pleading standards is to require the plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007); *see also Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). "When the alleged fraud is based on misrepresentation or false statements, it is not enough to merely allege that defendants knew or must have known that their statements were false. Instead, plaintiffs must support their allegations with specific facts that lay out the 'who, what, where, when, and how.' " *In re Great Atlantic & Pacific Tea Co., Inc. Sec. Litig.,* 103 Fed. Appx. 465, 469-470 (2004) (citations omitted). The Supreme Court, in *Iqbal,* made clear that:

> It is true that Rule 9(b) requires particularity when pleading "fraud or mistake," while allowing "[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally." But "generally" is a relative term. In the context of Rule 9, it is to be compared to the particularity requirement applicable to fraud or mistake. Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard. It does not give him license to evade the less rigid—though still operative—strictures of Rule 8. And Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label "general allegation," and expect his complaint to survive a motion to dismiss.

*Iqbal*, 129 S.Ct. at 1954; *see generally In re Suprema Specialties, Inc. Sec. Litig.,* 438 F.3d 256, 282 (3d Cir. 2006) ("[P]leading of scienter sufficient to satisfy Rule 9(b) 'may not rest on a bare

7

inference that a defendant "must have had" knowledge of the facts' or 'must have known' of the fraud given his or her position in the company. ".

Based on the reasons that follow, the Court finds that the fraud claim asserted in the Amended Complaint still suffers from at least one fatal flaw—namely, failure to plead the element of knowledge.

The Court begins its analysis by identifying the allegations contained in Plaintiffs' Amended Complaint that are merely legal conclusions because "they are not entitled to the assumption of truth." *Iqbal*, 129 S.Ct. at 1940.  "While legal conclusions can provide the complaint's framework, they *must* be supported by factual allegations." *Id.*

As to the element of knowledge, the Amended Complaint contains the following allegations:

- "The Roof Defendants knew that Freeney did not have the liquid resources to fund Roof Group and its expansion, including the compensation Roof Group agreed to pay to Plaintiffs." (Am. Compl., ¶ 41).

- "The Roof Defendants knew that Stern was not a wealthy individual, did not own an airplane or Caribbean homes, and had little or no financial resources." (*Id.*, ¶ 42).

- "The Roof Defendants knew that Stern had not invested in or agreed to provide any funding to Roof Group, and had no ability to provide any such funding." (*Id.*, ¶ 43).

Plaintiffs' conclusory allegations that the Roof Defendants collectively *knew* that statements being made to the Plaintiffs were false are insufficient to meet the 8(a) pleading standard inasmuch as Plaintiffs have alleged no *facts* to inject some measure of substantiation into such conclusory statements. *See generally Iqbal*, 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

In the absence of any supporting *facts*, these allegations are simply legal conclusions and thus do not benefit from the presumption of truth. *See id.* at 1940; *see e.g.*, *United States, ex rel. Pilecki-Simko v. Chubb Institute*, 443 Fed. Appx. 754, 760-761 (3d Cir. 2011) (finding insufficient facts to support element of knowledge where the complaint alleged, generally, that "Chubb . . . knowingly uses . . . false records or statements . . . .").

The Amended Complaint also contains the following statements that relate more indirectly to the element of knowledge:

- "The Roof Defendants falsely stated to Plaintiffs that they had available capital to expand RSLA into future locations." (Am. Compl., ¶ 37).

- "On April 7, 2010, West falsely stated that Stern was providing to Roof Group a $7,000,000 line of credit." (*Id.*, ¶ 33).

Again, these naked assertions are merely conclusory statements.  Plaintiffs have failed to plead sufficient facts in support of these statements that would allow this Court to draw the reasonable inference that Defendants are liable for the misconduct alleged—which requires knowledge that the statements made to the Plaintiffs were false.  *See, e.g., Santiago v. Warminster Twp*., 629 F.3d 121, 131 (3d Cir. 2010) ("We also disregard 'naked assertions devoid of further factual enhancement' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.' ") (citing *Iqbal*, 129 S.Ct. at 1949).  Absent such factual content, these allegations do not benefit from the presumption of truth. *Iqbal*, 129 S.Ct. at 1940.

In the absence of these allegations, there is no question that the Amended Complaint fails to properly plead the element of knowledge—an element that is *required* in order to state a claim for fraud under New Jersey law. *See Gennari v. Weichert Co. Realtors,* 148 N.J. 582, 610 (1997).  Thus, Plaintiffs' have failed to plead a claim of fraud that is plausible on its face.

Defendants' motion to dismiss this claim is granted.   Count Two of Plaintiffs' Amended Complaint is hereby dismissed with prejudice.[4]

**2.      *Breach of Fiduciary Duty***

Count Three of the Amended Complaint alleges that "[b]y reason of their positions as officers and managers, the Roof Defendants owed S&S a fiduciary duty to account and pay S&S a share of the profits of Roof Group" and that the "Roof Group Defendants breached" this duty. (Am. Compl., ¶¶ 83-84).  This claim is asserted against Roof Group, Stern, Freeney and West.

Defendants Roof Group, Freeney and West seek dismissal of this claim on the basis that it alleges no new facts since it was dismissed by the Court in its March 21, 2012 Opinion.  In particular, Defendants maintain that because Plaintiffs are not members of Roof Group— pursuant to the terms of the Agreement—there was never a fiduciary relationship between the parties.

As a preliminary matter, the Court agrees that the only meaningful amendment to this claim is the addition of the phrase "S&S was a member of Roof Group." (Am. Compl., ¶ 82); *see also id.* at ¶ 10 ("S&S is a member of Roof Group with a 2% membership interest."); ¶ 23 ("Additionally, pursuant to the Agreement, on May 13, 2010, S&S became a member of Roof Group with a 2% interest in Roof Group.").

In its March 21, 2012 Opinion, this Court held:

---

[4] The Court dismisses this claim *with* prejudice for three reasons: (1) the Court has already provided Plaintiffs with an opportunity in which to cure the pleading deficiencies in this claim, (2) Plaintiffs do not ask for leave to amend this claim or any claim asserted in the Amended Complaint, and (3) given Plaintiffs failure to allege any facts—*whatsoever*—in support of the theory that Defendants knew that the statements made to the Plaintiffs were false, the Court finds any future amendments of this claim—which *requires* the element of knowledge—to be futile.

> Under both California and New Jersey law, the elements of a
> breach of fiduciary duty claim are: (1) the existence of a fiduciary
> relationship between the parties; (2) the breach of the duty imposed
> by that relationship; and (3) damages or harm to the plaintiff
> caused by said breach. *See McKelvey v. Pierce*, 173 N.J. 26, 800
> A.2d 840, 859–60 (2002); *City of Atascadero v. Merill Lynch,
> Pierce, Fenner & Smith, Inc.,* 68 Cal.App.4th 445, 483, 80
> Cal.Rptr.2d 329 (1998). As stated *infra* in our analysis of
> Plaintiffs' conversion claim, the Court finds that, absent any pled
> facts beyond the plain terms of the Agreement regarding a mutual
> agreement by the parties concerning the triggering event for the
> vesting of the membership interests at issue, Plaintiffs have failed
> to plead that they had vested rights in said interests prior to the
> "first twelve (12) month period that the Restaurant generate[d]
> gross revenues of $6 million or more (the 'Vesting Event'). After
> gross of 6 million." (Defs. Mot. to Dismiss, Ex. A, "Term Sheet").
> While Plaintiffs present an alternative interpretation of the term
> "vest" in their Opposition Brief, nothing in the Complaint itself
> supports the existence of a fiduciary relationship in existence at the
> time of the breach. Therefore, because Plaintiffs have failed to
> sufficiently plead the existence of a fiduciary relationship, the
> Court need not consider the application of the "manager's
> privilege" to the facts of this case.

*SalandStacy Corp. v. Freeney*, No. 11-3439, 2012 WL 959473, at *12 (D.N.J. March 21, 2012).

Based on the reasons that follow, the Court agrees with the Defendants that Plaintiffs have failed

to plead any additional facts—beyond the terms of the Agreement—demonstrating that they had

*vested* rights in Roof Group, and have thus failed to plead a claim for breach of fiduciary duty

that is plausible on its face.

Plaintiffs admit that the fiduciary relationship alleged flows from their alleged

membership interest in Roof Group.  *See* Pl. Opp'n Br. at 16.  The Court has already rendered its

interpretation of the relevant language contained in the parties' Agreement—finding that no such

fiduciary relationship existed at the time the Agreement was allegedly breached because

Plaintiffs' 2% membership interest in Roof Group had not yet vested pursuant to the terms of the

"Membership Interests" section of the Agreement. *See SalandStacy Corp.,* 2012 WL 959473, at

11

*12.  It is clear that Plaintiffs have not amended this claim in accordance with this Court's March 21, 2012 decision *or* in an otherwise meaningful way; rather, Plaintiffs merely disagree with this Court's interpretation of this particular section of the Agreement, as set forth in its March 21, 2012 decision.  *See id.* ("It is respectfully submitted that such interpretation does not consider the language of the Agreement which provided for issuance of the Interests to S&S as of May 13, 2010, not as of a Vesting Event.").  Plaintiffs did not file a timely motion for reconsideration of this Court's March 21, 2012 Opinion and that decision is now law of the case.

In light of the Court's March 21, 2012 decision interpreting the relevant language of the parties' Agreement—finding that Plaintiffs' membership interest in Roof Group had not yet vested—Plaintiffs' conclusory statement that "S&S was a member of Roof Group" simply does not suffice.  *See Iqbal*, 129 S.Ct. at 1949.   Because there are no facts alleged in the Amended Complaint supporting the existence of a fiduciary relationship in existence when the alleged breach of the Agreement occurred, Plaintiffs have, again, failed to sufficiently plead the existence of a fiduciary relationship.    Defendants' motion to dismiss this claim is granted.  Count Three of Plaintiffs' Amended Complaint is dismissed with prejudice.[5]

### 3.    *Accounting*

The Amended Complaint alleges that "S&S is a member of Roof Group and is thus entitled to an accounting for all receipts and disbursements of Roof Group." (Am. Compl., ¶ 87).  As stated in this Court's March 21, 2012 Opinion, this claim is premised on the existence of a

---

[5] The Court dismisses this claim *with* prejudice for three reasons: (1) it has already provided Plaintiffs with an opportunity in which to cure the pleading deficiencies in this claim, (2) Plaintiffs have not asked for leave to amend, and (3) given Plaintiffs' mere disagreement with the manner in which this Court has interpreted the relevant language of the parties' Agreement—from which its theory of a fiduciary relationship flows—the Court finds that any future amendment of this claim would be futile.

fiduciary relationship between Plaintiffs and Defendants.  *See Borough of Kenilworth v. Graceland Mem'l Park Ass'n*, 124 N.J.Eq. 35, 37, 199 A. 716 (N.J. Ch. Ct. 1938) (noting that "the exercise of equitable jurisdiction to compel an account rests upon three grounds—first, the existence of a fiduciary of trust relation; second, the complicated nature or character of the account; and third, the need of discovery."  Since the Court has already found *infra* that Plaintiffs have failed to sufficiently plead the existence of a fiduciary relationship with Roof Group and the Roof Group Defendants, the Court finds that the equities favor dismissal of Plaintiffs' accounting claim, with prejudice.[6]  Defendants' motion to dismiss this claim is granted.

### CONCLUSION

Based on the reasons set forth above, Counts Two (fraud), Three (breach of fiduciary duty) and Four (accounting) of Plaintiffs' Amended Complaint are dismissed as to Defendants Freeney, West and Roof Group LLC *with prejudice.*  Defendants' motion to dismiss these claims is granted.

The Court notes that the foregoing claims are also asserted against Defendant David Stern a/k/a David M. Millar a/k/a Michael Millar.  On May 25, 2012, Stern's attorney of record filed a motion to withdraw as counsel (Docket Entry No. 55).  That motion, which was re-submitted on June 22, 2012, remains pending before Magistrate Judge Michael Hammer, U.S.M.J.  To date, there has been no responsive pleading filed by Defendant Stern with respect

---

[6] The Court dismisses this claim *with* prejudice for three reasons: (1) it has already provided Plaintiffs with an opportunity in which to cure the pleading deficiencies in this claim, (2) Plaintiffs have not asked for leave to amend, and (3) given Plaintiffs' mere disagreement with the manner in which this Court has interpreted the relevant language of the parties' Agreement—from which its theory of a fiduciary relationship flows—the Court finds that any future amendment of this claim—which requires the existence of a fiduciary relationship—would be futile.

to the Amended Complaint.  Because Stern has not sought dismissal of these claims, they shall

remain viable only as against him.

 An appropriate Order accompanies this Opinion.




       s/ Jose L. Linares
       Jose L. Linares
       United States District Judge